## COLONIAL SUGARS CO. v. DURAND.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1923.)

### No. 3148.

1. **Sales ⊚⇒150(3)—Delay of one day in complying with delivery demand held not as matter of law a default.**

Assuming that under a contract modified to provide for shipment on instructions from buyer within a reasonable time, the seller, on demand, was bound to ship or deliver promptly, there was no obligation to deliver instanter, and, without proof of a categorical refusal to perform, a delay of one day in complying with a delivery demand was not, as matter of law, and regardless of any explanation, a refusal to perform, or a default releasing the buyer from the contract.

2. **Sales ⊚⇒150(3)—Broker's act in submitting demand for delivery to seller held not a default by seller, though broker had authority under contract.**

A contract provided for shipment of sugar on instructions from buyer within a reasonable time. After the seller had repeatedly demanded performance and been put off by the buyer, and after the buyer had promised, but failed, to sign a settlement contract specifying the times for delivery, the first of which was January 24th, and after the seller had formally demanded instructions within 24 hours, the buyer, on January 24th, demanded a part of the sugar from a broker, but failed to disclose whether the demand was made under the old contract or under the unsigned new contract. *Held*, that the broker's act in submitting the demand to the seller before complying therewith was not a default releasing the buyer, even though the broker had authority under the original contract with respect to making deliveries.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Colonial Sugars Company against Scott S. Durand, doing business as S. S. Durand & Co. Judgment on a directed verdict for defendant, and plaintiff brings error. Reversed and remanded.

Colonial Sugars Company, plaintiff, brought this suit against Durand, defendant, to recover damages for the breach of a contract for the sale of 3,000 bags of sugar by the former to the latter. Liability for the price of 1,200 bags delivered was admitted, but breach, in refusing 1,800 bags, was denied, by defendant, who claimed that plaintiff defaulted in refusing to deliver 600 bags of sugar on request.

The contract, dated July 2, 1920, negotiated through Keiser-Hogle Company, a broker, covered the sale of 3,000 bags for "September shipment" from "refinery or delivery from spot within ——— days," and "sellers' privilege of shipping from refinery or delivery from spot on expiration day (or as soon thereafter as convenient) sufficient bulk fine granulated sugar (barrels

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or bags) to complete the undelivered balance of this contract, in lieu of shipping instructions." Its terms, not in dispute, admittedly embraced the obligation of the buyer to give shipping instructions during September which, when given, left the seller with the option of delivering from stock in Chicago, or delivery from refinery, and, if no shipping instructions were given on the expiration date of the contract, the seller might either deliver from spot or ship from refinery sufficient sugar of a specified grade to fill the contract.

Between August 28th and September 25th, the parties agreed to modify the contract by waiving "September shipment," and substituting shipment on specification or instructions from defendant within reasonable time. On October 8, 1920, plaintiff, at defendant's request, delivered the 1,200 bags noted. From that date until early in January, 1921, defendant made no further requisitions for shipment or delivery of the remaining 1,800 bags of sugar, and plaintiff respected its modified obligation to await specifications by the defendant within a reasonable time. But the latter was pressed by the broker for specifications and instructions. Upon this, referring to the period prior to January, 1921, it is testified by the broker's agent: "The market was declining and I asked Mr. Durand—the Colonial Sugars Company wanted the contract closed, and then it went on week after week, and month after month, and the market was declining all the time, and I advised him and asked him to clean up the contract and get rid of the sugar, both as representing Mr. Durand and the sellers of the sugar, the Colonial Sugars Company, which is the broker's duty; he acts for two parties. Mr. Durand always put me off, and I never could close the transaction."

On January 14th plaintiff's representative and attorney demanded of defendant that the sugar under the contract be taken at once, whereupon defendant, insisting that he could not take it all at once, proposed to take one car a week; that is, one on January 24th, one on the 31st, and one on February 7th. The representative informed the defendant that the latter must deal with him and not with the broker, respecting the delivery of the sugar. Again, on January 20th, the representative talked with defendant, at which time the latter asked for longer time for payment of one-half of the invoices; that he would not be able to pay the full invoices on regular terms. The representative advised him that that question would have to be submitted to the plaintiff company at New York, that the representative would leave the following day, and insisted upon a definite understanding as to time when defendant would take the sugar; and then defendant stated that he would take one car on the 24th, one on February 7th, 600 bags each—in all, the remaining 1,800 bags. Thereupon, in the presence of the defendant, the representative wrote out a "settlement contract" embodying defendant's proposition. In express terms of "settlement of entire controversy" between plaintiff and defendant, it provided for payment at the original contract price, the three cars to be taken "from spot stock now in Chicago," one car a week as above noted, payment to be made "within seven days from the date of the order." It further specified that the plaintiff agrees "that the foregoing shall be full and complete discharge of their said contract" (the contract of July 2d). This contract was left with defendant upon his promise that he would sign it. On the following day the representative, again calling on the defendant, was reassured that the latter would sign, though "he was worried about the payment." The representative told him that "he would have to sign this contract, or deal with the Colonial Sugars Company through me, and that he couldn't string us along any longer, and he said he would sign that contract probably three or four times in that conversation." The representative also delivered to defendant a written notice that, "if you (defendant) do not give me shipping instructions for the three cars of sugar held for your account within twenty-four hours from the date of delivery of this letter, * * * we will instruct Mr. Keiser (the broker) to sell these sugars for your account at the best obtainable market price and look to you for the difference." The notice added, "We regret to bring the matter to such a summary conclusion, but we decline to carry the sugar, and we note that you decline to sign the agreement submitted to you, giving definite dates upon which you will take the sugar."

Matters stood thus until January 24th, the day on which the first car was to be taken under the "settlement." On that day defendant, by messenger, delivered to the broker a written demand: "Please deliver to bearer an order for 600 bags Colonial sugar *against our contract*" (italics supplied). When this demand was made, Keiser, the broker's representative, dealt with it, as he testifies: "On January 24, 1921, I had a conversation with a representative from Mr. Durand's office in regard to the sugar in question. I told him that I would have to submit the matter to Mr. Keith (plaintiff's attorney, who had drawn the 'settlement' contract and received defendant's promise of signature, supra) of making delivery to him of sugar as I had no authority to make deliveries of Colonial sugars. * * * I told him (the messenger who delivered demand) that it would be necessary for me to get permission from Mr. Keith, who was attorney for the Colonial Sugars Company, as I had no authority to make any delivery unless he signed the agreement which Mr. Keith left with him."

Keiser at once communicated the foregoing to plaintiff, who promptly— that is, on the next day—by wire responded to the broker and to defendant, in substance asserting its readiness to deliver under the contract of July 2d; that the sugar is in Chicago held for defendant's account at its request; that instructions be given to the broker "at once, and take this sugar under your contract"; that, if defendant refused or failed to give such instructions "by Thursday morning" (which would be the 27th), sugar will be sold and loss sued for. The message to the broker, after stating substance of message to defendant, advised, "If he (defendant) won't take the 1,800 bags by Thursday morning, with or without signing a new contract, please sell sugar for his account," etc.

Thereupon, on the 25th, the broker tendered to defendant a warehouse delivery order for 600 bags sugar "a/c Colonial Sugars Company." A letter accompanying the tender stated: "Referring to your letter of January 24th, requesting that we deliver to the bearer an order for 600 bags of Colonial sugars against your contract. We inclose our order No. 27722 for 600 bags Colonial fine granulated sugar to be applied against your contract of July 2, 1920, No. 1038, price 24c. f. o. b. New Orleans, plus freight, 63.7c. This leaves 1,200 bags still due you on this contract, and the sugar is in Chicago ready for delivery." This tender the defendant, so the testimony shows, "refused to accept, saying [he] wanted the sugar yesterday." Thereupon plaintiff, treating defendant's acts as a repudiation, sold the sugar— the 1,800 bags—at a loss.

Defendant offered no testimony, moved for direction of verdict, which was granted, and the ensuing judgment, dismissing the action, is here for review.

Francis M. Lowes, of Chicago, Ill., for plaintiff in error.

Robert S. Iles and John F. Voigt, both of Chicago, Ill., for defendant in error.

Before BAKER and EVANS, Circuit Judges, and GEIGER, District Judge.

GEIGER, District Judge (after stating the facts as above). [1, 2] Did plaintiff default by refusing to deliver sugar to defendant when demanded? That question was answered as a matter of law, affirmatively, upon granting defendant's motion for a directed verdict. Assuming that plaintiff, when requested by defendant, was bound to ship or deliver promptly, or with reasonable promptness, there is nothing whatever in the case fixing an obligation to deliver instanter. Therefore, without proof of categorical refusal to perform, a delay of one day from the 24th to the 25th, in complying with a delivery demand, could not be held, as matter of law, and in defiance of any proffered reasonable explanation, to be a refusal to perform, a repu-

diation of obligation, or a default upon which defendant was released from the contract. Further, upon the proofs as plaintiff adduced them, the actual authority of the broker (discussed by the parties) in respect of making deliveries has no necessary relevancy in determining whether plaintiff refused delivery on January 24th. Such proofs are: That the July 2d contract for September shipment was modified to provide for shipment within reasonable time on defendant's specifications; that from October 2d (when 1,200 bags were taken by defendant) to January 14th, plaintiff incessantly demanded performance, but was "put off" by defendant; that from January 14th to 20th plaintiff's insistence—and threats—resulted in its tendering the "settlement" contract signed by it and promised to be signed by defendant; that on January 21st plaintiff formally notified defendant to give instructions within 24 hours; that under the contract of July 2d plaintiff could deliver from spot or from refinery at its option, payments in 7 days from "arrival of cars"; that if a reasonable time had elapsed on January 14th to 20th, defendant was then obliged to take all of the remaining 1,800 bags; that if, on the contrary, plaintiff was to be held to its "settlement contract," the sugar became deliverable in three specified installments on "order" of defendant, "from spot stock now in Chicago," payments, however, to be 7 days "from date of order."

Therefore, assuming that the broker knew of these facts, what was his situation when, on the 24th, defendant, without previous response of any sort to the plaintiff's demands, with the unsigned, but promised, settlement contract then still in his hands, makes written peremptory demand on the broker for "600 bags of Colonial sugar on our contract"? Was he seeking acceptance of an order for part of the 1,800 bags, all then due on the old contract, thereby to gain indefinite indulgence on the remainder; or was he in this manner (rather than by signing) attempting to give a belated "acceptance" of the "settlement contract"? Unless such contract was in effect, the broker could not have authority to deliver thereunder. But his treatment of the defendant, when demand was made, rather pointedly put it up to the latter to disclose whether the demand was made under the old or under the then (so far as the broker knew) unsigned new contract. Upon defendant's silence, and in view of all that had transpired, was the broker, even assuming that he originally had authority to make deliveries under the old contract, then bound to assume that he still possessed it and was required to exercise it, instantly, at the peril of the plaintiff? Clearly, if the broker had no authority to exercise, defendant could not complain of the submission of the matter directly to plaintiff. But, if he had any authority, it did not include the power of determining whether the plaintiff was to act or to be bound under the one or under the other contract. Hence his conduct under the circumstances was dictated, not only by reason and prudence, but by the very policy of delay, silence, and equivocation pursued by the defendant. It was a perfectly normal consequence of defendant's own conduct, and affords no basis upon which to assert a refusal or default by plaintiff; nor does any allegation in the

pleadings, or any other aspect of the proofs, foreclose plaintiff in that respect.

The judgment is reversed, and the cause is remanded for a new trial.